UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
MAY CHEN,                                               :
                                                        :
                            Plaintiff,                  :
                                                        :        24-CV-9050 (VSB)
             - against -                                :
                                                        :        **OPINION & ORDER**
XIYAN ZHANG, *et al.*,                                  :
                                                        :
                            Defendants.  :
                                                        :
--------------------------------------------------------X

Appearances:

Quynh M. Chen
Q. Chen Law
Newark, CA
*Counsel for Plaintiff*

Pete Scott Wolfgram
Brian Loyde Yates
Xiyan Zhang
Stratum Law LLC
Pasadena, CA and Philadelphia, PA
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff asserts claims of breach of contract and alter ego liability against Defendants

under California law.  Following Defendants' removal of the case from California state court to

the United States District Court for the Northern District of California, Defendants successfully

moved to transfer the case to this District, where the parties have litigated related claims since

2019.  Now before me are:  (1) Plaintiff's motion to transfer this case back to the Northern

District of California, (Doc. 35); (2) Plaintiff's motion to amend the complaint to add a non-

diverse defendant, (Doc. 9); and (3) Defendants' motion to dismiss the complaint on preclusion

grounds, (Doc. 5).  For the reasons that follow, Plaintiff's motions are DENIED, and Defendants'

motion is GRANTED.

## I.    **Factual Background**[1]

Plaintiff May Chen, a California resident, "is a sole proprietor who does business as

'Ability Customs Brokers' [("Ability")] to provide U.S. Customs import services."  (Doc. 1-1

("Compl.") ¶ 1.)  These services include "U.S. Customs clearance, bond coverage,

transportation, and cargo insurance."  (*Id*. ¶ 7.)  Defendant Xiyan Zhang ("Zhang") works in

various capacities for Defendant Eagle Trading USA LLC ("Eagle") and Defendant Ameriway

Corporation ("Ameriway").[2]  (*See id*. ¶¶ 5, 11, 19.)

On April 7, 2017, Zhang "emailed Plaintiff to retain Plaintiff's services for importation

and U.S. Customs clearance."  (Compl. ¶ 9.)  On April 11, 2017, Zhang and Pete Wolfgram[3]

executed a power of attorney appointing Plaintiff, doing business as Ability Customs Brokers,[4]

"to provide a list of certain services for the importation of goods and 'generally to transact

Customs business'" on Eagle's behalf.  (*Id*. ¶¶ 10–11, 14.)  The power of attorney stated that it

would "remain in full force and effect until revocation in writing is duly given," and that Zhang

and Eagle "acknowledge[d] receipt of" Plaintiff's "Terms and Conditions of Service governing

---

[1] Unless otherwise noted, this factual background is based on the allegations in Plaintiff's complaint.  (Doc. 1 ("Compl.").)  I assume the truth of these allegations for purposes of deciding the motion to dismiss, but I make no factual findings as to the veracity of the allegations and my discussion of them should not be construed as factual findings.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  As discussed *infra*, the factual allegations in Plaintiff's complaint are similar to the factual allegations discussed in *Ameriway Corp. v. Chen*, No. 19-CV-9407, 2021 WL 6113373 (S.D.N.Y. Dec. 27, 2021), *reh'g denied*, 2024 WL 1526175 (S.D.N.Y. Apr. 9, 2024), *appeal docketed*, No. 24-1298 (2d Cir. May 10, 2024).

[2] Defendant Zhang is also one of Defendants' attorneys.

[3] Wolfgram is Defendants' attorney in this action but is not a party to this action.

[4] "Customs brokers are private individuals, partnerships, associations or corporations licensed, regulated and empowered by U.S. Customs and Border Protection (CBP) to assist importers and exporters in meeting Federal requirements governing imports and exports.  Brokers submit necessary information and appropriate payments to CBP on behalf of their clients and charge them a fee for this service."  U.S. Customs & Border Protection, *Becoming a Customs Broker* (last updated Mar. 6, 2024), https://perma.cc/6DBG-FFVQ.

all transactions between the parties." (*Id*. ¶¶ 12–13.)  Additionally, "Zhang provided Plaintiff with Eagle's Form SS-4[5] listing 'Shipping Jia' as the responsible member." (*Id*. ¶ 15.)  Plaintiff emailed Zhang "a service rate sheet" showing "line items of different services and the corresponding price of each service provided by Plaintiff" and advising that "duties and fees are payable prior to entry summary's due date." (*Id*. ¶¶ 16–17.)

Following the parties' engagement, Plaintiff acted as Defendants' customs broker between approximately April 2017 and October 2019 pursuant to the power of attorney.  (*See* Compl. ¶¶ 21, 24, 30–31.)  "[A]fter services were provided," Plaintiff would email invoices to Zhang.  (*Id*. ¶ 23.)  In some instances, "the invoices would include third-party fees" that Plaintiff paid on Eagle's behalf.  (*Id*.)  "At other times" and "when requested by Plaintiff['s] Business," Zhang would "pay the third-party fees directly."  (*Id*. ¶ 25.)  Additionally, "[a]t various times, Mr. Zhang would be late in payment and Plaintiff['s] Business would accept late payments."  (*Id*. ¶ 24.)  "For example, on June 10, 2019," Plaintiff emailed Zhang a "current statement and past due statement," requesting that Defendants "remit" payment "as soon as possible."  (*Id*.)

At some point before August 20, 2019, "Zhang fell behind on payments to Plaintiff," and "the parties discussed a payment plan."  (Compl. ¶ 26.)  On August 20, 2019, Zhang emailed Plaintiff that Defendants were "happy to set a payment schedule."  (*Id*.)  On August 21, 2019, Eagle "allegedly revok[ed] the power of attorney," and then "requested further clearance services"; Zhang "confirmed on August 26, 2019 that [Defendants] 'grant[ed] limited authority to clear [a] particular container.'"  (*Id*. ¶ 28.)  Meanwhile, on August 22, 2019, Plaintiff emailed

---

[5] Form SS-4, issued by the Internal Revenue Service, is an Application for Employer Identification Number. Internal Rev. Serv., *About Form SS-4* (last updated Apr. 23, 2024), https://perma.cc/V3YK-YDAD.

Zhang that she was "happy to settle the payment" and would "provide a most current statement" to Zhang. (*Id*. ¶ 27.)

The parties did not resolve their billing dispute, and on September 19, 2019, Plaintiff emailed Zhang "to request payment on past overdue invoices based on a payment schedule installment plan of a weekly $10,000 payment." (Compl. ¶ 29.) The next day, Zhang responded:

> It had always been our intention to make full payments of all your outstanding invoices like we have been doing for over two years. I recall having discussions with you communicating to you that it is difficult to have an accelerated payment to pay off all open invoices at once on such a short notice. We never had to do something like this in the past. I also recall that we discussed some possible payment plans such as a fixed amount per week. However, we did not reach any agreement.

(*Id*. ¶ 30.)

On October 10, 2019, "Zhang filed a lawsuit against [Plaintiff] regarding a dispute specifically about the possession of certain container shipments," Plaintiff alleges that the lawsuit "is unrelated to the past-due unpaid invoices." (*Id*. ¶ 31.) On January 21, 2020, Zhang filed a pleading in that lawsuit stating "he did not receive a payment schedule for the past-due invoices." (*Id*. ¶ 32.)

Plaintiff alleges that as of December 29, 2023, Defendants owe $380,567.23 in unpaid invoices that Zhang promised to pay, but has not because of "the lack of a payment schedule and a specific deadline." (*Id*. ¶¶ 33.)

## II.    Procedural History

Plaintiff initiated this action on December 29, 2023 by filing a complaint in the Superior Court of California, Alameda County. (Doc. 1-1 ("Compl.").) The complaint asserts a claim for breach of contract and a claim for "alter ego liability." (*Id*. ¶¶ 34–38.) On June 30, 2024, Defendants removed the case to the United States District Court for the Northern District of

California based on diversity jurisdiction.  (Doc. 1 ("NOR").)  On July 6, 2024, Defendants filed a motion based on the first-to-file doctrine to dismiss the complaint or transfer the case to this District.  (Doc. 5 ("Transfer Mot.").)  Rather than respond to the motion, on July 17, 2024, Plaintiff filed a motion for leave to amend the complaint to add a non-diverse defendant, IPEL, Inc.  (Doc. 9 ("Mot. Amend.").)  On July 31, 2024, Defendants filed an opposition to the motion to amend the complaint.  (Doc. 19 ("Opp'n Amend.").)  On August 7, 2024, Plaintiff filed a reply in support of the motion to amend.  (Doc. 22 ("Reply Amend.").)  On October 11, 2024, Plaintiff filed an opposition to the motion to dismiss or transfer.  (Doc. 27 ("Transfer Opp'n").)

On November 25, 2024, Judge Jon S. Tigar, the District Judge assigned to the case in the Northern District of California, granted Defendants' motion to transfer the case to this District based on the first-to-file rule.  (Doc. 32.)  I accepted the transferred case as related to No. 19-CV-9407.

On November 27, 2024, Plaintiff filed a motion to transfer the case back to the Northern District of California.  (Doc. 35 ("Retransfer Mot." or "Retransfer Motion").)  On December 12, 2024, Defendants filed an opposition to the Retransfer Motion.  (Doc. 37 ("Opp'n Retransfer").)  On December 18, 2024, Plaintiff filed a reply in support of the Retransfer Motion.  (Doc. 39 ("Reply Retransfer").)

On December 17, 2024, Defendants filed a motion to dismiss the complaint.  (Doc. 38 ("MTD").)  On December 31, 2024, Plaintiff filed an opposition to the motion to dismiss.  (Doc. 42 ("MTD Opp'n").)  Defendants replied on January 7, 2025.  (Doc. 43 ("MTD Reply").)

I first address whether there is subject matter jurisdiction over the transferred case.  I then turn to the currently pending motions in the following order:  (1) the Retransfer Motion to

transfer the case back to the Northern District of California, (Doc. 35); (2) the motion to amend the complaint, (Doc. 9); and (3) the motion to dismiss, (Doc. 38).

### III.    <u>Subject Matter Jurisdiction</u>

In federal court, subject-matter jurisdiction is a threshold inquiry, and courts have an independent obligation to confirm it before adjudicating a case. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); Fed. R. Civ. P. 12(h)(3). Defendants removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. (*See* NOR.) Plaintiff's state-court complaint alleges that Plaintiff is a citizen of California, Defendant Zhang "is an individual located in Pennsylvania, CA," and Defendants Eagle and Ameriway are citizens of Delaware and Pennsylvania. (Compl. ¶¶ 1–4.)

Defendants' notice of removal is consistent with Plaintiff's complaint in all but one respect; it asserts that Defendant Zhang is a citizen of Pennsylvania and that "'Pennsylvania, CA' is presumably a typographical error." (Compl. ¶ 11.) It further alleges that "Zhang has been domiciled in Philadelphia, PA for over ten years, and intends to remain living there." (*Id*.) Plaintiff does not challenge this assertion, (*see generally* Mot. Amend), and it is consistent with the address Zhang submitted as an attorney on Defendants' pleadings, (*see, e.g.*, NOR 6; Transfer Mot. 14; MTD 14). Subject matter jurisdiction is therefore proper under 28 U.S.C. § 1332(a), as Plaintiff is a citizen of a different state than any Defendant and the amount-in-controversy is greater than $75,000. Indeed, neither party challenges this Court's subject-matter jurisdiction over the case as it is currently pled. (*See generally* Mot. Amend.; Retransfer Mot.; MTD.)

**IV.**    **Motion to Retransfer**

    **A.** *Legal Standard*

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The party seeking a transfer "bears the burden of proof and must make a strong showing that the balance of convenience and the interest of justice weigh heavily in favor of a transfer."  *Headd v. Parts Auth., LLC*, No. 21-CV-6219, 2021 WL 4482152, at *1 (S.D.N.Y. Sept. 30, 2021) (quoting *Dymokowski v. Nextel Commc'ns Inc.*, No. 07-CV-8473, 2021 WL 2380275, at *3 (S.D.N.Y. June 8, 2021)).  "Among the factors to be considered in determining whether to grant a motion to transfer venue 'are, *inter alia*:  (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'"  *N.Y. Marine and Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)).

    Additionally, a motion to retransfer implicates the law-of-the-case doctrine, which "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Dymkowski*, 2021 WL 2380275, at *2 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815 (1988)).  Because the original transfer decision is the law of the case, *see Christianson*, 486 U.S. at 816, "[m]otions for retransfer are disfavored," and "[a]bsent a clear-cut showing that transfer is in the best interests of the litigation, [re]transfer must be denied," *Dymkowski*, 2021 WL 2380275, at *3 (internal

quotation marks omitted). *See also Christianson*, 486 U.S. at 816 ("Indeed, the policies supporting the [law-of-the-case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.").

### B. *Discussion*

Plaintiff fails to show an entitlement to retransfer.  The law of the case on this issue begins with the transfer order.  (*See* Doc. 32.)  Judge Tigar transferred Plaintiff's action based on the first-to-file rule, (*id*. 4–7), which provides that "where there are two competing lawsuits, the first suit should have priority," *Employers Ins. of Wausau v. Fox Ent. Group, Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008) (internal quotation marks omitted and alteration adopted).  Here, the "first suit" was the third-party complaint in *Ameriway v. Chen*, in which Chen asserted claims based on the same transactions underlying the present case and involving substantially the same parties.  (Doc. 32 at 5–6.)  *See also* Third Party Compl., *Ameriway v. Chen*, No. 19-CV-9407 (S.D.N.Y. July 31, 2020), ECF No. 41.  The transfer order also noted Chen's action in *Chen v. Eagle Trading USA, LLC*, No. 22-CV-658, 2024 WL 1532336 (S.D.N.Y. Apr. 9, 2024), which is also based on the same transactions underlying this case.

Judge Tigar next considered whether the "balance of convenience" weighed in favor of a transfer.  (Doc. 32 at 6.)  *Cf. Wausau*, 522 F.3d at 275 (noting that an exception to the first-to-file rule may apply if the "balance of convenience" weighs against a transfer).  He concluded that he could not "identify any additional expenses or inconvenience that Chen would suffer if the case were litigated in New York," noting that "Chen has already been litigating her defenses, counterclaims, affirmative claims, and appeals . . . for the past four years in [Southern District of New York] without raising any argument as to venue or personal jurisdiction."  (Doc. 32 at 6–7

8

(emphasis omitted).)  Chen does not challenge this assertion, and Chen's appeal of my dismissal

of her third-party complaint is currently pending before the Second Circuit.  *See Ameriway Corp.*

*v. Chen*, No. 19-CV-9407, 2021 WL 6113373 (S.D.N.Y. Dec. 27, 2021), *reh'g denied*, 2024 WL

1526175 (S.D.N.Y. Apr. 9, 2024), *appeal docketed*, No. 24-1298 (2d Cir. May 10, 2024).

Plaintiff's arguments concerning transfer do not change the conclusion that transfer to

this District was warranted under the first-to-file rule.  For instance, Plaintiff points out that "the

plaintiffs in any civil litigation . . . are deemed to be the masters of their complaint," and that

Plaintiff here filed the case in California, the case involves events that took place in California,

and "[c]ounsel for Defendant [*sic*] is located in California."  (Retransfer Mot. 7.)  Although

Plaintiff does not cite the relevant § 1404(a) factors, these arguments align with the factors

regarding "the plaintiff's choice of forum," "[the] relative ease of access to sources of proof,"

and "the locus of operative facts."  *Lafarge*, 599 F.3d at 112 (internal quotation marks omitted).

Yet despite these California connections, Plaintiff filed a prior version of this case as the third-

party complaint in *Ameriway* in this District.  Given Plaintiff's prior attempt to litigate this case

in this District (and the ongoing appeal), Plaintiff cannot now argue that the "balance of

convenience and the interest of justice weigh heavily in favor of a transfer" out of this District.

*Dymokowski*, 2021 WL 2380275, at *3.  Further, the argument that "California is more familiar

with the applicable California causes of action," (Retransfer Mot. 7), is of "little weight," as all

federal courts are presumed to be equally capable of applying the laws of the fifty states.  *S-Fer*

*Intern., Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215–16 (S.D.N.Y. 1995) ("If New

York's choice of law rules provide that California law is the appropriate law to apply, then a

New York court will be capable of applying it." (citations omitted)).

Plaintiff also claims that retransfer is warranted because Judge Tigar's transfer order "did not apply the Ninth Circuit rule" to decide a pending motion to remand before deciding a pending motion to transfer.  (Retransfer Mot. 3.)  Courts in the Second Circuit also apply the general rule that "[w]hen presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand."  *Callen v. Callen*, 827 F. Supp. 2d 214, 215 (S.D.N.Y. 2011) (internal quotation marks omitted).  However, Plaintiff's pending motion was not a motion to remand; rather it was a "motion for leave to file [a] first amended complaint" to add a non-diverse defendant.  (Mot. Amend. 1.)  In other words, Plaintiff did not file a remand motion based on a claim that federal jurisdiction did not exist.  Although the motion, if granted, would destroy the federal basis for jurisdiction and thus result in a remand, whether to grant a motion to amend to add a non-diverse defendant is a discretionary, rather than jurisdictional, inquiry.  *See, e.g.*, *Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 515 (S.D.N.Y. 2000).  The Ninth Circuit follows the same rule.  *Lewis v. Home Depot, Inc.*, No. 2:24-CV-955, 2024 WL 5088243, at *2 (E.D. Cal. Dec. 12, 2024) ("The Ninth Circuit has stated that 'the language of § 1447(e) is couched in permissive terms,'" so a "court has . . . discretion in determining whether to allow an amendment to add a non-diverse party that would destroy . . . diversity jurisdiction." (quoting *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998))).  Therefore, Judge Tigar's decision to resolve the transfer motion rather than the motion to amend is not a basis for retransfer.

Because Plaintiff has not shown that a retransfer is warranted given the law of the case or under the § 1404(a) factors, Plaintiff's retransfer motion is DENIED.

## V.    **Motion to Amend**

### A.  *Legal Standard*

When a plaintiff seeks to amend a complaint to add a party whose presence would destroy diversity jurisdiction, 28 U.S.C. § 1447(e)—rather than Federal Rule of Civil Procedure 15—supplies the relevant standard.  *Isaly v. Boston Globe Media Partners, LLC*, 650 F. Supp. 3d 106, 111–12 (S.D.N.Y. 2023) (collecting cases), *aff'd*, No. 23-67-CV, 2023 WL 6439901 (2d Cir. Oct. 3, 2023).  The statute provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  "The decision whether to admit the new parties is within the sound discretion of the trial court."  *Briarpatch*, 81 F. Supp. 2d at 515 (citing *Wyant v. National R.R. Passenger Corp.*, 881 F. Supp. 919, 921 (S.D.N.Y. 1995)).

Courts apply a two-part inquiry when evaluating whether to permit a diversity-destroying amendment.  "First, the Court must determine whether the parties were properly joined under Federal Rule of Civil Procedure 20."  *Isaly*, 650 F. Supp. 3d at 114.  Rule 20 permits joinder of additional defendants when "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Second, the joinder must be "consistent with principles of fundamental fairness."  *Isaly*, 650 F. Supp. 3d at 114 (quoting *Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003)).  The relevant factors are "(1) any delay and the reason for delay, (2) prejudice to the defendant, (3) the likelihood of multiple litigation, and (4) the plaintiff's motivation in seeking joinder."  *Id.*

### B. *Discussion*

Plaintiff's proposed amended complaint names IPEL, Inc. ("IPEL"), a Delaware

corporation with a principal place of business in Pasadena, California, as an additional defendant

to Plaintiff's breach of contract and alter ego claims.  (Doc. 9-1 ("Am. Compl.") ¶¶ 5, 6, 38, 44.)

Although the proposed amended complaint supplies few allegations regarding IPEL's role in the

parties' dispute, Plaintiff alleges that "there is unity of ownership and interest between Mr.

Zhang, Eagle, Ameriway, and IPEL," such that "each of the defendants are alter ego of each

other [*sic*]."  (Am. Compl. ¶ 6.)  I assume for purposes of deciding the motion to amend without

deciding that Rule 20 would permit joinder.  *Cf. Briarpatch*, 81 F. Supp. 2d at 515 (presuming

Rule 20 joinder "would be appropriate" because the proposed amended complaint added

conspiracy claims against the non-diverse defendants).  Ultimately, however, the § 1447(e)

"fundamental fairness" factors weigh against permitting Plaintiff's proposed amendment.  *Isaly*,

650 F. Supp. 3d at 114 (quoting *Nazario*, 295 F. Supp. 2d at 363).

The first factor—delay in seeking amendment—"is measured from the date of removal."

*Id.* (internal quotation marks omitted).  Plaintiff sought leave to amend approximately two-and-a-

half weeks after Defendants' removal; this relatively short time period weighs in Plaintiff's favor.

*Cf. id.* (collecting cases).

The remaining factors weigh strongly against amendment.  Defendants would be

prejudiced by amendment and remand because it would delay resolution of the pending motion

to dismiss, especially in light of my knowledge of and experience gained from handling the

dispute in the *Ameriway v. Chen* and *Chen v. Eagle* cases.  *Cf. Isaly*, 650 F. Supp. 3d at 115

(noting that remand is prejudicial "where the matter would 'be handled more efficiently in

federal court than in state court' due to the federal court's prior resolution of a related case"

(quoting *Pu v. Russell Publg. Grp., Ltd.*, No. 15-CV-3936, 2015 WL 13344079, at *4–5

(S.D.N.Y. Dec. 29, 2015) (alterations adopted)).  Fairness also weighs against amendment when

a "Plaintiff has repeatedly chosen to pursue his related claims in multiple actions."  *Isaly*, 650 F.

Supp. 3d at 115.

      Moreover, it appears that Plaintiff's main reason for seeking to add IPEL as a defendant

is to destroy diversity.  *Id*. (explaining that the "principal desire to destroy the court's basis for

diversity jurisdiction is an impermissible motive for seeking joinder and remand after removal to

federal court").  Although Plaintiff sought to add IPEL as a defendant shortly after removal of

this case to federal court, Plaintiff did not assert any claim against IPEL in the *Ameriway v. Chen*

third-party complaint, *see* 2021 WL 6113373, nor did Plaintiff assert any claim against IPEL in

*Chen v. Eagle Trading, USA, LLC*, No. 24-CV-658, 2024 WL 1532336 (S.D.N.Y. Apr. 9, 2024)

(granting motion to dismiss claims based on similar facts).[6]  The fact that Plaintiff seeks to add

IPEL as a defendant so late in the game—considering the litigation that has been pending before

me since 2019, including Plaintiff's third-party complaint filed in 2020, and based on so few

factual allegations—suggests that Plaintiff is motivated by jurisdictional gamesmanship rather

than a desire to resolve the merits of the dispute.

      None of Plaintiff's contrary arguments suggest that amendment is appropriate.  Plaintiff

cites *Righetti v. Shell Oil Co.*, for the proposition that "the legislative history of [§] 1447(e)

forecloses" consideration of "the plaintiff['s] motive for adding a non-diverse defendant."  711 F.

Supp. 531, 535 (N.D. Cal. 1989).  (*See* Mot. Amend. 5–6.)  However, since *Righetti* was decided,

courts have since concluded that "[t]he weight of the authority" permits consideration of whether

---

[6] Ironically, in *Eagle*, I dismissed Chen's claims because she had failed to establish this Court's subject-matter jurisdiction.  2024 WL 1532336, at *3–4.

a plaintiff's "motives" in amending the complaint "included to deprive the court of federal jurisdiction." *Marroquin v. Target Corp.*, No. 2:19-CV-341, 2019 WL 2005793, at *4–5 (C.D. Cal. May 7, 2019); *accord Isaly*, 650 F. Supp. 3d at 115.  In any case, *Righetti* recognized that "late amendments which destroy diversity with the intent of delaying proceedings" are disfavored under § 1447(e).  711 F. Supp. at 534.  As discussed, the amendment to add IPEL is "late" given that Plaintiff first asserted these claims on May 22, 2020 in filing the third-party complaint in *Ameriway v. Chen*.  Although Plaintiff argues in briefing that Defendant Zhang is "using IPEL staff and IPEL assets for his personal benefit," including "using IPEL funding to fund this litigation," (Mot. Amend. 8–9), these allegations are not in the proposed amended complaint and are not connected to the factual circumstances underlying Chen's disputes with Zhang, Ameriway, and Eagle.  Moreover, Plaintiff offers no explanation for her failure to assert a claim against IPEL in any of the prior litigations or, indeed, in its state-court complaint.

Because Plaintiff offers no persuasive reason I should exercise my discretion under § 1447(e) to permit the filing of an amended complaint, Plaintiff's motion for leave to amend is DENIED.

## VI. <u>Motion to Dismiss</u>

### A. *Legal Standard*

"A motion to dismiss" for failure to state a claim "is designed to test the legal sufficiency of the complaint." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (internal quotation marks omitted).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court takes the well-pled facts in the complaint as true, draws all reasonable inferences in the plaintiff's favor, and ignores any "legal conclusions"

among the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper

when "the allegations in a complaint, however true, could not raise a claim of entitlement to

relief" as a matter of law. *Twombly*, 550 U.S. at 558. When deciding a motion to dismiss for

failure to state a claim, a Court may only consider the "facts stated on the face of the complaint,

documents appended to the complaint or incorporated in the complaint by reference, and matters

of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)

(alterations adopted) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d

Cir. 2016)).

### B.  *Discussion*

In moving to dismiss the complaint, Defendants argue that my decision dismissing

Plaintiff's third-party complaint in *Ameriway v. Chen* precludes Plaintiff's claims in this action.

(*See* Doc. 38.)[7]

### 1.  Choice of Law

I first address a preliminary question of which jurisdiction's preclusion law to apply.

"The preclusive effect of a federal-court judgment is determined by federal common law."

*Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "For judgments in federal-question

cases . . . federal courts participate in developing 'uniform federal rules' of res judicata, which

[the United States Supreme] Court has ultimate authority to determine and declare." *Id.*

(alteration adopted) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508

(2001)). "For judgments in diversity cases, federal law incorporates the rules of preclusion

applied by the State in which the rendering court sits." *Id.* at 891 n.4.

---

[7] Defendants' motion to transfer, (Doc. 5), also sought dismissal under the first-to-file rule, but Judge Tigar elected to transfer the case instead. *See supra* § IV.B.

In *Ameriway*, I exercised supplemental jurisdiction over Chen's third-party complaint based on Ameriway's claim against Chen under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968.  2021 WL 6113373, at *4.  Thus, *Ameriway* is neither a judgment in a federal-question case nor a judgment in a diversity case, *see Taylor*, 553 U.S. at 891, but rather an adjudication of a state-law issue based on my supplemental jurisdiction from a federal-question case, *see* 28 U.S.C. § 1367.  Although the Supreme Court's decisions in *Taylor*, 553 U.S. 880, and *Semtek*, 531 U.S. 497, do not speak directly on the choice of preclusion law applicable to federal judgments based on supplemental jurisdiction, the policies underlying choice-of-law in this area suggest that the rule for diversity cases applies to the preclusive effect of *Ameriway*.  In explaining the preclusive effect of the judgments of federal courts sitting in diversity, the Supreme Court stated that "[s]ince state, rather than federal, substantive law is at issue there is no need for a uniform federal rule.  And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court."  *Semtek*, 531 U.S. at 508.  In *Ameriway*, I applied New York law.  *See* 2021 WL 6113373, at *4.  Thus, the federal common law's concern for "uniformity," *Semtek*, 531 U.S. at 508, is best served by applying the preclusion rules of "the State in which the rendering court sits," that is, New York, *Taylor*, 553 U.S. at 891 n.4.  *See also Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, No. 13-CV-8997, 2016 WL 236249, at *3 n.4 (S.D.N.Y. Jan. 20, 2016) ("This Court would, therefore, apply . . . New York rules of preclusion to judgments on claims premised upon diversity or supplemental jurisdiction."); *Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-CV-6414, 2014 WL 2619815, at *13 n.10 (S.D.N.Y. June 2, 2014) ("In any event, 'there is no discernable

difference between federal law and New York law concerning res judicata.'" (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002))).

### 2. Res Judicata

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor*, 553 U.S. at 892. Claim preclusion "forecloses successive litigation of the very same claim," following a final judgment, "whether or not relitigation of the claim raises the same issues as the earlier suit." *Id*. (internal quotation marks omitted). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id*. (internal quotation marks omitted). Conceptually, these preclusion doctrines "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id*. (internal quotation marks omitted and alterations adopted).

Although Defendants cite caselaw related to both issue and claim preclusion, blurring the distinctions between these doctrines,[8] the motion seeks dismissal of Plaintiff's "claims," and I therefore examine whether claim preclusion warrants dismissal. (MTD 1.)

"'Under both New York law and federal law' . . . claim preclusion bars re-litigation if '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Weir v. Montefiore Med. Ctr.*, No.

---

[8] Plaintiff's confusion may be because "claim preclusion" is sometimes referred to as "res judicata," *see Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 366 (2d Cir. 1995). In *Taylor v. Sturgell*, the Supreme Court endeavored to "replace[] a more confusing lexicon" by explaining that "res judicata" is meant to apply "collectively" to both issue and claim preclusion. 533 U.S. at 892, 892 n.5.

24-1527, 2025 WL 289497, at *2 (2d Cir. Jan. 24, 2025) (summary order) (alterations adopted) (first quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997); and then *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).

First, my December 27, 2021 Opinion & Order dismissing Chen's third-party complaint for failure to state a claim, *Ameriway v. Chen*, 2021 WL 6113373, at *4–6, was a "final judgment on the merits and thus has claim preclusive effects," *Weir*, 2025 WL 289497, at *2 (alteration adopted) (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009)).  Plaintiff argues that under California law, an order does not have preclusive effect until any appeals are exhausted.  (*See* MTD Opp'n 12.)[9]  As discussed, California preclusion doctrines do not apply to the *Ameriway* dismissal.  *See supra* § VI.B.1.  Under the applicable federal common law, which incorporates New York law, "the preclusive effect of a judgment on the merits is immediate, regardless of whether an appeal of the judgment is pending."  *Williams v. City of New Rochelle*, No. 19-CV-2710, 2019 WL 2866790, at *2 (S.D.N.Y. July 3, 2019) (citing *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998)).

Second, there is no dispute that Chen, Eagle, and Zhang were all parties to the *Ameriway* third-party complaint and in the instant action.  Plaintiff argues that Ameriway was not "in privity" with Eagle and Zhang such that the prior dismissal does not have preclusive effect on this action.  *Maharaj*, 128 F.3d at 97.  (*See* MTD Opp'n 13, 17.)  However, for purposes of preclusion, "privity extends to 'a new defendant'"—that is, new in the subsequent action— "'known by a plaintiff at the time of the first suit where the new defendant has a sufficiently

---

[9] This appears to be correct as a matter of California law.  *See, e.g.*, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ("Under California law, . . . a judgment is not final for purposes of res judicata during the pendency of and until the resolution of an appeal." (quoting *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985))).

close relationship to the original defendant to justify preclusion.'" *Weir*, 2025 WL 289497, at *2 (quoting *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995)); *see also Taylor*, 553 U.S. at 893–95 (recognizing "exceptions" to "the rule against nonparty preclusion," including when a nonparty was "adequately represented by someone with the same interests who was a party to the suit" (internal quotation marks omitted and alteration adopted)).

Here, Chen knew of Ameriway at the time she filed the third-party complaint; Ameriway was of course the eponymous plaintiff in that lawsuit. Moreover, in the dismissal, I quoted from the third-party complaint in noting that Chen alleged that Zhang was the CEO of Ameriway and that Chen "argu[ed] that [she] incurred costs 'in reliance on Ameriway's implied agreement to act as a guarantor,'" *Ameriway*, 2021 WL 6113373, at *1, *4. Chen's "refer[ence] to" Ameriway "by name" and her allegation that its "conduct formed the basis" of Zhang's conduct in the prior action evinces a "sufficiently close relationship to justify preclusion." *Weir*, 2025 WL 289497, at *2. Additionally, the attorneys representing Ameriway in the prior action were the same attorneys—Peter Scott Wolfgram and Zhang—who represented the third-party defendants in the prior action; Wolfgram and Zhang also represent Defendants here. Thus, Ameriway was "adequately represented by someone with the same interests who was a party" to the prior action. *Taylor*, 553 U.S. at 894 (internal quotation marks omitted and alteration adopted). In short, Plaintiff cannot avoid the preclusive effect of the prior dismissal by altering the parties; claim preclusion "operates to preclude claims, rather than particular configurations of parties." *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003).[10]

---

[10] It is true that "[w]hen a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties." *Cent. Hudson*, 56 F.3d at 367. However, this rule only applies when the potentially liable parties are "not in privity" with each other. *Id*.

Third, Plaintiff's claims in the instant action either were or could have been raised in the *Ameriway* third-party complaint. Both actions assert that Zhang, Eagle, and one other party (Shipping Jia in the third-party complaint, Ameriway in the instant complaint) must pay certain invoices because of the power of attorney between Chen and Eagle/Zhang and because of the parties' course of conduct. (*See* Compl. ¶¶ 14, 35, 37–38.) *See also Ameriway*, 2021 WL 6113373, at *1 ("On or about April 11, 2017, Zhang executed a Power of Attorney on behalf of Eagle Trading that authorized Chen to act as Eagle Trading's customs broker in connection with the import of goods into the United States. . . . Chen alleges that Eagle Trading has failed to pay her a total of $407,369.73. She also alleges that both Zhang and Jia are liable for this same amount, on the grounds that the 'course of dealings' demonstrates that they each 'acted as guarantor of payment' for the amounts Eagle Trading owed." (citation omitted)); *id*. at *5 (noting that the third-party complaint asserted a claim "for breach of contract"). Both cases "involve[] the same 'transaction' or connected series of transactions"—the power of attorney and the parties' course of dealings—and Plaintiff's instant claims are "based on facts that were also present in the first" lawsuit, and the claims in both actions "require[] the same [supporting] evidence." *Maharah*, 128 F.3d at 97; *see also id*. (citing *Cohen v. Board of Educ. of East Ramapo Cent. Sch. Dist.*, 84 A.D.2d 536, 537 (2d Dep't 1981)). Plaintiff does not identify anything that would have prevented it from raising its present California breach-of-contract and alter-ego claims in the *Ameriway* third-party complaint. *Cf. Weir*, 2025 WL 289497, at *2 (finding claim precluded when there was "no indication [the plaintiff] could not have named the [newly-named] defendants in his prior two lawsuits").

Plaintiff concedes that it asserted a breach-of-contract claim in the *Ameriway* third-party complaint, but argues this is not preclusive because my dismissal rested on Chen's failure to

plead factual allegations to support a contract claim.  *See* 2021 WL 6113373, at \*5.  (*See also* Doc. 42 at 17 ("Because the first case lacks factual allegations of a contract, there is insufficient evidence on the pleadings to show that the injury is the same based on how the injury is defined in the respective complaints.").)  This misunderstands claim preclusion.  Dismissing a complaint because its factual allegations fail to state a claim is an adjudication on the merits and bars subsequent claims based on the underlying allegations against the original parties and their privities.  *See Berrios*, 564 F.3d at 134.  Thus, Plaintiff cannot avoid preclusion by suggesting that additional (as-yet unpled) factual allegations might mean the new claim is for a different "injury" depending on "how the injury is defined in the respective complaints."   (Doc. 42 at 17.) Permitting the type of successive, piecemeal litigation that Plaintiff proposes would run roughshod over the fairness and efficiency considerations underlying our judicial system's preclusion doctrines.  *See Taylor*, 553 U.S. at 892.  In other words, Plaintiff needed to plead any claims based on the power of attorney in one complaint.  Because Plaintiff chose to file them in the *Ameriway* third-party complaint, my dismissal of that complaint for failure to state a claim now bars subsequent actions.

Claim preclusion bars the claims in Plaintiff's instant complaint.  Defendants' motion to dismiss is therefore GRANTED.

## VII.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Retransfer Motion, (Doc. 35), and to amend the complaint, (Doc. 9), are DENIED, and Defendants' motion to dismiss the complaint, (Doc. 38), is GRANTED.

The Clerk of Court is respectfully directed to close the case and to terminate the pending motions at Docs. 5, 7, 9, 20, 35, and 38.

SO ORDERED.

Dated: March 12, 2025
    New York, New York

Vernon S. Broderick
United States District Judge